

**SO ORDERED.**

**SIGNED this 23 day of December, 2019.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| IMPERIAL FROZEN FOODS OP CO, LLC, | CASE NO. 19-05419-5-SWH |
| Debtor. | |

ORDER ALLOWING EMERGENCY EX PARTE MOTION FOR APPROVAL OF
COMPROMISE AND SETTLEMENT WITH SUPERIOR FOODS INC.
AND SUPERIOR FOODS INTERNATIONAL LLC

THIS MATTER coming before the Court upon the Emergency Ex Parte Motion for Establishment of Private Sale Procedure for All Assets and for Approval of Private Sales Pursuant to Such Procedure (the "Motion") filed Gregory B. Crampton, as Chapter 7 Trustee in this case ("Trustee") seeking the entry of an Order, pursuant to 11 U.S.C. Section 105 and Bankruptcy Rule 9019, authorizing and allowing, a compromise and settlement resolution with Superior Foods Inc. and Superior Foods International LLC (collectively, "Superior") (i) resolving and terminating a Covenant-Not-To-Compete held by, and in favor of Imperial Frozen Foods Op Co, LLC ("Debtor"), and (ii) resolving and settling a disputed ownership of "consignment" inventory. Upon review of the record, and consideration of evidence presented, it appears to the Court, and the Court finds:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Bankruptcy Court for the Eastern District of North Carolina has jurisdiction over this matter pursuant to 28 U.S.C. § § 151, 157, and 1334.

2. Imperial Frozen Foods Op Co, LLC ("Debtor") filed a voluntary petition for relief under Chapter 7 on November 22, 2019 ("Petition Date"). As of the date of this Motion, Debtor has not yet filed its Schedules or Statement of Affairs.

3. Gregory B. Crampton was appointed Chapter 7 Trustee of the estate of Debtor on November 26, 2019 and is qualified and now acting as such Trustee.

4.      Among the assets in this proceeding are certain tangible personal property belonging to the estate, consisting of food product inventory (the "Food Product"). Such Food Product includes: (i) Finished Goods, (ii) Bulk food product, and (iii) Packaging. By Order entered on December 9, 2019, the Court established a Sale Procedure for such Food Product (Dkt. 32).

5.      Besides Food Product, the assets of the Debtor consist of various other assets, comprising tangible and intangible, wherever located, including but not limited to machinery and equipment, general intangibles (including books and records and customer/supplier contact information, Sunkistsnacks website, domain names and social media pages), contract rights, intellectual property, trademark license agreements, and product brand names (collectively, the "Others Assets").

6.      ACF FinCo I LP ("Ares") has a perfected security interest in all or substantially all assets of the Debtor, whether tangible or intangible, wherever located, including the Other Assets, and all products and proceeds of the foregoing, pursuant to a Loan and Security Agreement dated October 1, 2018, which security interest was perfected by filed UCC Financing Statements. The outstanding debt balance owed to Ares as of November 19, 2019, approximated $8.9 million.

7.      On information and belief, Tree Line Direct Lending LP ("Tree Line") has a perfected security interest in all, or substantially all, assets of the Debtor, including the Other Assets, pursuant to a Credit Agreement dated as of October 1, 2018, which security interest was perfected by filed UCC Financing Statements. The outstanding debt balance owed to Tree Line as of November 22, 2019, approximated $30,531,313.91million.

8.      Ares and Tree Line entered into an Intercreditor Agreement dated as of October 1, 2018 ("Intercreditor Agreement") setting forth their agreement as to certain of their respective rights and obligations with respect to the assets and properties of the Debtor and other obligors, including but not limited to the relative priority of their respective liens against such assets and properties.

9.      All of the assets of the Debtor, including its Other Assets, are significantly overencumbered by the outstanding balances owed to Ares and Tree Line, holders of perfected security interests in the Other Assets.

10.     Subject to the written Consent of Ares and Tree Line, the Trustee has proposed, subject to Court approval, to enter into a compromise and settlement with Superior Foods, Inc. and Superior Foods International LLC based on the following terms and conditions (collectively, the following terms and conditions are referred to as the "Compromise and Settlement"):

    (a)     Superior purchases $35,000.00 of bulk or finished goods inventory for the following inventory (which designation and selection of inventory may be changed by the parties):

    From the Bulk List:

| Code | Item Number | Item Description | Qty | USD/lb |
|---|---|---|---|---|
| VEG | 011-905352C | Mukimame | 63,233 | $0.55 |
| VEG | 012-900352C | Edamame | 120,450 | $0.55 |
| VEG | 021-900352 | Green Beans 4-5 Sievewhole | 26,463 | $0.50 |
| VEG | 054-900352 | Broccoli Florets 1 - 2" | 15,840 | $0.55 |
| VEG | 054-900352 | Broccoli Florets 1 - 2" | 223 | $0.55 |
| VEG | 084-900352 | Cauliflower 1.5-2.5 | 22,536 | $0.52 |
| TBC | 458-900452C | Mango Chunks | 38,490 | $0.70 |
| Other | 465-905452C | Pineapple Chunks | 36,990 | $0.40 |

The purchase would be conditioned on the following:

- Disclosure of origin and producer (with corresponding documents): Superior needs to verify that product has been produced in a facility approved by Superior Foods in order to resell.

- Submittals of Certificate of Analysis (COA): Superior Quality Assurance and Food Safety team needs to review COA for each lot to make sure that product meets bacteriology and regulatory standards to satisfy compliance issues.

- Assurance from Imperial representatives that these lots have not been placed on "hold" due to quality issues.

- None of these totes or cartons are damaged (inspection upon loading).

In the event the bulk or finished goods inventory is not available, the parties agree to reduce the purchase price accordingly.

.

(b)     Superior will purchase approximately $766,919.41 of disputed "consignment" inventory (the "Sold Inventory") for $250,000 (the "Consignment Proceeds"), with no reservation of rights regarding any "consignment" assertion;

(c) Superior reserves the right to assert the following PACA claims which are associated with former sales, and are not connected to the $766,919.41 of disputed consignment inventory, the Sold Inventory, or the Consignment Proceeds:

  (i) Superior Foods, Inc. - $7,260.80.
  (ii) Superior Foods International LLC - $318,394.01.

(d) Such reserved PACA claims shall not be asserted in the Consignment Proceeds. Superior retains its right to assert such reserved PACA claims as set out in (c) above, and the rights of the Trustee and third parties to challenge such PACA claims also are reserved

(e) Superior shall pay Lineage its unpaid fees relating to the Sold Inventory (approximating $80,000);

(f) For a sixty day period (60) following the date of entry of this Order, Superior shall use its best efforts to assist the Trustee in selling, on a twenty percent (20%) commission basis (the "Superior Commission"), inventory owned by the Debtor's Chapter 7 bankruptcy estate, including Finished Goods, Bulk, and Packaging, subject to the following conditions: (i) all sales must be at or above book value; and (ii) the Superior Commission will be limited to, and capped at, the total amount of $25,000.00;

(g) Superior pays $250,000 to the Trustee for termination and/or mutual release from the Non-Competition Agreement dated October 1, 2018, among the Debtor, Superior Foods, Inc. and Superior Foods International, LLC (the "Non-Competition Contract"). Superior wires $250,000 to the Trustee upon acceptance of the Compromise and Settlement by Ares and Tree Line. Payment by Superior of all amounts due to the Trustee under this Compromise and Settlement shall effectuate and constitute (without any other documentation) a termination and mutual release of all obligations pursuant to the Non-Competition Contract of all parties previously bound by the Non-Competition Contract, including but not limited to Superior Foods, Inc., Superior Foods International, LLC, and their Affiliates (as such term "Affiliates" is defined in the Non-Competition Contract);

(h) Payment by Superior of all amounts due to the Trustee under this Compromise and Settlement also shall effectuate and constitute (without any other documentation) a mutual release between the Debtor and Superior of any and all claims; provided, however, that Superior shall retain its right to assert the reserved PACA claims as stated in (c) above, and the Trustee and third parties also shall retain all of their defenses and objections thereto.

11. Ares and Tree Line have liens in the Non-Competition Contract and have conditioned their consent to this Compromise and Settlement upon the requirement that the

structure of the termination and/or mutual release from the Non-Competition Contact shall not impair their lien rights in the proceeds derived from such component of the Compromise and Settlement.

12. All payments pursuant to the terms of the Compromise and Settlement shall be paid to the Trustee and held in escrow by the Trustee in his Trustee bank account set up for this Chapter 7 case pending, as applicable, (i) Court resolution of (A) potential PACA Trust Claims against such funds pursuant to the PACA Claims Procedure, and (B) potential warehouseman lien claims, and/or (ii) subsequent orders of this Court.

13. Any and all claims, right and interests, if any, of any third party (including but not limited to Ares, Tree Line, any PACA claimant, or any warehouseman) shall be transferred from the sold Food Product to the net sale proceeds escrowed with the Trustee, with the same validity, enforceability and priority, if any, as such claim, rights or interests had against the Food Product as of the Petition Date.

14. Allowance of this Motion on an emergency, ex parte basis is in the best interests of the Debtor, and its creditors, and the Chapter 7 estate.

15. Under the emergency circumstances of this case, no notice or further opportunity for hearing is feasible, possible, or practical.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Trustee's Motion is GRANTED;

FURTHER ORDERED, ADJUDGED AND DECREED the Compromise and Settlement, subject to the necessary written consents of Ares and Tree Line, is allowed and approved as described in the Findings of Fact set forth above in the Order;

FURTHER ORDERED, ADJUDGED AND DECREED that all payments pursuant to the terms of the Compromise and Settlement shall be paid to the Trustee and held in escrow by the Trustee in his Trustee bank account set up for this Chapter 7 case pending, as applicable, (i) Court resolution of (A) potential PACA Trust Claims against such funds pursuant to the PACA Claims Procedure, and (B) potential warehouseman lien claims, and/or (ii) subsequent orders of this Court;

FURTHER ORDERED, ADJUDGED AND DECREED that any and all claims, right and interests, if any, of any third party (including but not limited to Ares, Tree Line, any PACA claimant, or any warehouseman) shall be transferred from the sold Food Product to the net sale proceeds escrowed with the Trustee, with the same validity, enforceability and priority, if any, as such claim, rights or interests had against the Food Product as of the Petition Date.

FURTHER ORDERED, ADJUDGED AND DECREED that the structure of the termination and/or mutual release as to the Non-Competition Agreement shall not prejudice the rights and positions of Ares and Tree Line with respect to their respective liens in the Non-

Competition Contract continuing to be enforceable against the consideration to be delivered by Superior for such termination and/or mutual release.

END OF DOCUMENT